**In re: IRREVOCABLE STANDBY
LETTER OF CREDIT NO.
SE444393W.**

**No. 1:04CV00836.**

United States District Court,
M.D. North Carolina.

Sept. 20, 2004.

Jason M. Sneed, Kevin A. O'Brien, Alston & Bird, LLP, Bank of America Plaza, Charlotte, NC, Candace N. Smith, Adam J. Biegel, Alston & Bird LLP, Atlanta, GA, for Plaintiff.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

Astec, Inc. ("Astec"), a Tennessee corporation, initiated this action by filing a Petition and Motion for Temporary Restraining Order and Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65(a)-(b). Astec seeks to enjoin S.A. Toffolutti ("Toffolutti"), a French corporation, from drawing down funds on a certain letter of credit, and to enjoin General Electric Capital Corporation ("GE Capital") and Wachovia Bank, N.A. ("Wachovia Bank") from instituting proceedings to pay out any funds on this letter of credit. For the reasons set forth below, the court finds that Astec has failed to satisfy the requirements for obtaining such extraordinary relief. Astec's motion will therefore be DENIED.

## I.

According to the allegations in the Petition, in May 2004 Astec entered into a contract with Toffolutti for the sale of portable road construction equipment ("the Agreement.") Toffolutti agreed to pay the price of US$2.1 million, plus transportation charges of US$220,000. (Pet. & Mot. Ex. B at 21.) The terms of the Agreement indicate that all funds would be wired by Toffolutti prior to shipment of the equipment from Astec's Chattanooga, Tennessee, factory to the port at Le Havre, France. The Agreement also indicates that Astec would supply a performance bond representing 10% of the value of the equipment. Astec included a 60–day warranty. (*Id.*)

On June 25, 2004, GE Capital issued Letter of Credit No. SE444393W ("Letter of Credit") on Astec's application, specify-

ing Toffolutti as the beneficiary. (*Id.* Ex. A.) This is an irrevocable standby Letter of Credit in the amount of $220,000, and is set to expire on September 25, 2004. (*Id.*) The Letter of Credit authorizes Toffolutti to draw on this credit at any time by presenting certain documents to a Winston–Salem, North Carolina, location of Wachovia Bank. The required documents include the following: (1) a draft at sight drawn on GE Capital; (2) the original Letter of Credit; and (3) a statement from Toffolutti that the asphalt plant it had purchased from Astec pursuant to their contract of May 25, 2004, "does not meet the specifications" set out in the contract, and specifying an amount "due and owing." (*Id.*)

The Letter of Credit was meant to insure Toffolutti in the transaction with Astec, but the exact nature of this insurance is unclear. The Agreement itself and Astec's application for the Letter of Credit indicate that the Letter was a "performance bond," (*id.* Ex. B at 21; Ex. A), but Astec states in its Petition and Motion that it was "to insure Astec's shipment of the equipment and assistance in the equipment's startup under the Agreement" (*id.* ¶ 13).

The Agreement contains a "law controlling" clause establishing that the Agreement "and all questions regarding the performance of the parties hereunder shall be controlled by the laws of France." (*Id.* Ex. B at 22.) There is also a mediation clause stating that "where a dispute exists concerning this Agreement, it shall be submitted to mediation" to take place in Paris, France. (*Id.* Ex. B at 21.) The clause further provides that if mediation fails to resolve any dispute within six weeks, the parties agree to "submit the dispute to the concerned Court of Paris." (*Id.*)

Toffolutti appears to have prepaid all amounts as required, and Astec shipped the full order to Le Havre around the beginning of August 2004. On arrival, Toffolutti began noticing several problems with the equipment and notified Astec of its concerns. (*Id.* Ex. C.) First, Toffolutti encountered problems clearing the equipment through customs. Its letter of September 10, 2004, to Astec says the equipment remained in Le Havre, unused, for a month. (*Id.* Ex. F.) Astec says there was a special duty imposed on the shipment by the French Customs and Excise Service of which it was previously unaware and about which it had not warned Toffolutti, but points out that the contract was clear in imposing an obligation on the buyer to pay any such import charges. (*See id.* Ex. B at 17; Ex. E.) Another concern for Toffolutti, as noted in Astec's service report and in Toffolutti's September 10 letter, was a lack of steering axles, which made it difficult to negotiate the equipment around traffic circles. (*Id.* Ex. F.) Astec asserts that steering axles are an option, available only at extra cost, and were not ordered or otherwise specified by Toffolutti. (*Id.* ¶ 25.) Other concerns included a lack of warning decals, problems with electrical circuits, reflectors and lights not in compliance with specified European ("EEC") norms, and a missing mud flap. (*Id.* Exs. C, F.) Because of these concerns, Toffolutti declared, in its September 10 letter, it would draw on the Letter of Credit for the full amount. (*Id.* Ex. F.)

Astec argues that it has "substantially and satisfactorily performed its obligations under the Agreement and any claim by Toffolutti on the Letter of Credit would be entirely unwarranted and injurious to Astec." (Pet'r's Br. Supp. Pet. & Mot. T.R.O. & Prelim. Inj. at 4.) Astec now invokes the diversity jurisdiction of this court requesting a temporary restraining order and preliminary injunction to enjoin Wachovia and GE Capital from instituting proceedings to pay out any funds on the Letter of Credit, and to enjoin Toffolutti

from drawing down the funds. (Pet. & Mot. at 10.)

## II.

As a preliminary matter, the court has misgivings about its jurisdiction in this case because of the mediation law clauses in the agreement. These questions, however, will be set aside for now.

■■■ Preliminary injunctive relief is an "extraordinary" remedy to be granted "in limited circumstances and then only sparingly." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). In assessing requests for temporary restraining orders and preliminary injunctions in a diversity case, the federal courts apply federal standards. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir.1991). The courts use a four-factor balancing test: (1) "the likelihood of irreparable harm to the plaintiff if [relief] is denied"; (2) "the likelihood of harm to the defendant if the requested relief is granted"; (3) "the likelihood that the plaintiff will succeed on the merits"; and (4) the public interest. *Id.* at 812 (citing to the test first developed in *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co.*, 550 F.2d 189, 194–96 (4th Cir.1977); other citations omitted). The burden is on the plaintiff to make an adequate showing under the four-factor test. *Microsoft Corp.*, 333 F.3d at 526. Further, the plaintiff must make a clear showing of actual, imminent, and irreparable harm, as well as the inadequacy of legal remedies, to warrant further consideration under the four-factor test. *Id.* at 526 n. 3. In any event, the first two factors are the most important. *Direx Israel*, 952 F.2d at 812.

## III.

■■■ First, Astec has failed to show that it will face irreparable harm if its request for injunctive relief is denied. While the threat by Toffolutti may well be actual and imminent (Toffolutti states in writing its intent to draw down the Letter of Credit, which expires on September 25), the degree of harm Astec faces is not significant enough to warrant a court's intervention. Astec claims only that allowing Toffolutti to draw down the Letter of Credit will require a very expensive and difficult lawsuit to retrieve the money because its adversary is in France. (Pet'r's Br. Supp. Pet. & Mot. T.R.O. & Prelim. Inj. at 5–6.) Even if such litigation is expensive and difficult, Astec entered into this agreement with full knowledge that its buyer was located in another country and it expressly agreed to mediate and litigate any disputes abroad. (*See* Pet. & Mot. Ex. B at 22.) In addition, the Letter of Credit amount of $220,000 is just over 10% of the price of the goods that Astec sold under this contract, and so not an extraordinary amount in this context. Furthermore, there is no indication that Toffolutti would be unable to repay the money if it were later found to have been wrongfully taken.

Astec further argues that it will be irreparably harmed by the loss of goodwill the company will endure abroad. It argues this is the kind of loss "for which there is no adequate remedy at law." (Pet'r's Br. Supp. Pet. & Mot. T.R.O. & Prelim. Inj. at 6.) Astec relies on *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.* as an example of such a situation. 22 F.3d 546 (4th Cir.1994). However, that case involved the potential for a *permanent* loss of customers. *Id.* at 552. Astec has not made any showing that the loss of goodwill resulting from this dispute will result in any permanent loss of customers. Presumably, other current and potential customers will learn of this dispute, but should Astec choose to fight Toffolutti in court and win, these same customers will also learn of Astec's vindication. In addition, there is no indication of how long any

potential customers might carry a negative attitude toward Astec or if they would truly form a negative attitude at all. If the facts are as Astec alleges, and Astec has clearly not breached its agreement with Toffolutti, there may be no loss of goodwill. Further, any potential contractual loss, or any loss to reputation and goodwill are the types of losses a damage award can adequately address.

■ On the second factor, Toffolutti could be harmed by a restraining order or injunction preventing it from drawing on the Letter of Credit. This is Toffolutti's contractual right and a part of the agreement for which it bargained and paid value. To prevent this company from exercising its contractual rights could very likely cause it harm.

■ With regard to the third factor, there is no clear indication that Astec would succeed on its claims that it had substantially performed and that any draw by Toffolutti on the Letter of Credit would be unwarranted, or even fraudulent. There is a question as to what the Letter of Credit was to insure against. If it was to insure the shipping and startup provisions, then Astec may be correct that Toffolutti is not entitled to use the Letter of Credit. The fact that the bond of $220,000 is the same amount as the shipping charges lends credence to this theory. However, if it was to serve as a performance bond, thus insuring Astec's overall performance, then Toffolutti's several complaints about the equipment may give it rights to draw down the funds. There is sufficient evidence to support this second theory and create a question of fact. The application for this Letter of Credit indicates that it was to "serve as a performance bond," and the amount is close to the 10% bond provided for in the contract. Ten percent of the price of the equipment would be $210,000 and of the overall contract price would be $232,000, relatively close to the Letter of Credit amount of $220,000. Additionally, one of the documents Toffolutti must present to Wachovia to draw on the Letter of Credit is a statement that the "asphalt plant ... does not meet specifications," not that the shipment failed or that the startup services were not provided. (*See* Pet. & Mot. Ex. A.) [1]

■ Finally, there is no indication that this agreement between a manufacturer and a buyer of goods will in any way affect the public interest. Astec argues that Toffolutti is using the Letter of Credit to harass and threaten Astec into providing options and services it did not agree to sell, and that allowing Toffolutti to draw down the funds would "vitiate the entire premise of the Letter of Credit as an insurance mechanism." (Pet'r's Br. Supp. Pet. & Mot. T.R.O. & Prelim. Inj. at 9.) There is no merit to this contention. Astec agreed to provide the Letter of Credit for Toffolutti's benefit and Astec agreed to the terms and parameters of its use. Astec was the party in the best position to set parameters for the use of a Letter of Credit when it entered this Agreement. Astec characterizes this as a potential "windfall" to Toffolutti. (*Id.*) On the contrary, the Letter of Credit was part of the agreed-upon exchange between these two parties. Astec had to know when it entered this agreement that Toffolutti could draw down the funds on the mere presentation of documents to Wachovia. There is

---

**1.** If this was a performance bond, there is also a question as to whether Astec adequately performed its contract obligations. Upon arrival of the equipment in Le Havre, Toffolutti noted various problems. The contract required Astec to furnish equipment in compliance with EEC norms, and a few components apparently were out of compliance. (*See id.* Ex. D.) Without giving Toffolutti an opportunity to respond, it is not possible for the court to determine whether these problems were material or minor breaches.

no public interest in protecting Astec from a risk it knowingly and intelligently took.

### IV.

In conclusion, Astec has not shown (1) that it will suffer irreparable harm without this relief; (2) that Toffolutti will not be harmed if the relief is granted; (3) that Astec is likely to succeed on the merits; or (4) that granting this relief is in the public interest. Because it failed to make the required showing on any of these four factors, Astec is not entitled to a' temporary restraining order or preliminary injunction. Astec's motion will therefore be DENIED.